UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK, <br><br>                    Plaintiffs, <br><br> -v- <br><br> PRIME CONTRACTORS INC., <br><br>                    Defendant. | CIVIL ACTION NO. 23 Civ. 9033 (AT) (RFT) <br><br> **REPORT AND RECOMMENDATION** |

**TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

On October 13, 2023, Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining and Educational and Industry Fund (the "ERISA Funds"), Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund"), and the Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro") (together, the "Funds") filed this action against Defendants Prime Contractors, Inc. ("Prime"), United Technology, Inc. ("UTB"), and QBE Insurance Corporation ("QBE"), seeking recovery of delinquent employer contributions and liquidated damages owed to the Funds and arising out of an Independent

Building Construction Agreement with the New York City District Council of Carpenters, for alleged violations of sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), among other claims. (*See* ECF 1, Compl. ¶¶ 1, 4-7, 11, 14.)

After Prime failed to appear, despite having been properly served (ECF 6, Aff. of Service), the Clerk of the Court entered a certificate of default. (*See* ECF 16, Certificate of Default.) Plaintiffs sought a default judgment in accordance with Your Honor's Individual Practices in Civil Cases. (*See* ECF 18-22.) Your Honor ordered Prime to show cause why a default judgment should not be entered. (*See* ECF 23, Order.) The matter was referred to a magistrate judge for general pretrial proceedings as well as for a report and recommendation on Plaintiffs' application for a default judgment. (*See* ECF 47, Order of Reference; ECF 50, Am. Order of Reference.)

For the reasons set forth below, I respectfully recommend that a judgment should be entered against Prime in favor of Plaintiffs, with Plaintiffs to be awarded $16,807.25 in liquidated damages against Prime, plus post-judgment interest pursuant to 28 U.S.C. § 1961.

## BACKGROUND

### I.    Factual Background

Given Prime's default, I accept as true all well-pleaded factual allegations in the Complaint (ECF 1), except as to damages; I also rely on the declarations submitted by Plaintiffs in support of the Proposed Order To Show Cause (ECF 19, Declaration of William Davidian ("Davidian Decl."); ECF 20, First Declaration of Adrianna R. Grancio ("First Grancio Decl.").) *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient

2

common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."); *Lopez v. Emerald Staffing*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (relying on and accepting as true facts from the plaintiffs' declarations and the plaintiffs' complaint) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).[1]

UTB was the general contractor for two New York City School Construction Authority projects: (1) P.S. 67X in the Bronx (the "P.S. 67X Project") and (2) Monroe Academy for Visual Arts in the Bronx (the "Monroe Academy Project") (together, the "Projects"). (*See* ECF 1, Compl. ¶¶ 24, 26, 28.) UTB subcontracted Prime to provide sidewalk shed protective bridging and scaffolding work for the Projects. (*See id.* ¶¶ 24, 26, 28, 44.)

On January 7, 2019, Prime signed a Letter of Assent binding it to the New York City School Construction Authority's Project Labor Agreement ("PLA") for the Monroe Academy Project. (*See* ECF 19, Davidian Decl. ¶ 4; ECF 19-1, PLA Letters of Assent.) On November 30, 2020, Prime signed another Letter of Assent binding it to the PLA for the P.S. 67X Project. (*See id.*) As a signatory to the PLA, Prime agreed to be bound by all the local collective bargaining agreements and the local trust agreements for employee benefit funds. (*See* ECF 19, Davidian Decl. ¶ 5; ECF 19-2, New York City School Construction Authority Project Labor Agreement.) Thus, Prime was bound by the Independent Building Construction Agreement (the "CBA"), which required Prime to make hourly contributions to the Funds for employees' work within the jurisdiction of the New York City District Council of Carpenters (the "Union"). (*See* ECF 19,

---

[1] Unless otherwise indicated, internal quotation marks and citations are omitted.

Davidian Decl. ¶¶ 6-7; ECF 19-4, Independent Building Construction Agreement.) The Trustees of the Funds also established a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). (*See* ECF 19, Davidian Decl. ¶ 10; ECF 19-5, Revised Statement of Policy for Collection of Employer Contributions.) The Collection Policy outlines that if there is litigation over unpaid contributions, the Funds shall be entitled to collect the delinquent contributions and (1) interest on the unpaid contributions at the prime rate plus 2%; (2) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages in the amount of 20% of the unpaid contributions; (3) audit costs; and (4) reasonable costs and attorneys' fees incurred by the Funds for all time spent in collection efforts. (*See* ECF 1, Compl. ¶ 22; ECF 19, Davidian Decl. ¶ 18; ECF 19-4, Independent Building Construction Agreement. Art. XV, § 6(a).)

QBE issued two payment bonds that guarantee payment of wages and benefits owed by UTB and its subcontractors in connection with work performed on the Projects. Specifically, QBE issued payment bonds BND92988583 and BND92988517, which guarantee payments on the P.S. 67X Project and the Monroe Academy Project, respectively. (*See* ECF 1, Compl. ¶¶ 29-30; ECF 19, Davidian Decl. ¶¶ 40-41.)

Prime failed to remit all the contributions to the Funds in connection with the work on the Projects. (*See* ECF 1, Compl. ¶ 24.) The Funds determined that Prime had failed to remit contributions of $6,927.84 and promotional fund contributions of $11.52 on the P.S. 67X Project. (*See* ECF 19, Davidian Decl. ¶ 20; ECF 19-7, P.S. 67X Project Delinquency Calculations.) Additionally, the Funds determined that Prime had failed to remit contributions of $86,213.12

and promotional fund contributions of $143.36 on the Monroe Academy Project. (*See* ECF 19, Davidian Decl. ¶ 19; ECF 19-6, Monroe Academy Project Delinquency Calculations.)

According to Plaintiffs' initial calculations, 20% of the principal of $86,213.12 owed on the Monroe Academy Project amounts to liquidated damages of $17,242.62. (*See* ECF 19, Davidian Decl. ¶ 38; ECF 19-6, Monroe Academy Project Delinquency Calculations.) And 20% of the principal of $6,927.84 owed on the P.S. 67X Project amounts to liquidated damages of $1,385.57. (*See* ECF 19, Davidian Decl. ¶ 39; ECF 19-7, P.S. 67X Project Delinquency Calculations.) The total is $18,628.19 in liquidated damages.

On October 3, 2022, and March 6, 2023, UTB issued two checks to the Funds for contributions owed but not paid by Prime on two separate New York City School Construction Authority projects. (*See* ECF 19, Davidian Decl. ¶ 42.) UTB overpaid by $2,593.75, and so the Funds allocated that amount to the outstanding contribution amounts for the Monroe Academy Project. (*See id.*) On or about November 21, 2023, New York City School Construction Authority sent a check to the Funds for the Monroe Academy Project for $62,309.68. (*See* ECF 19, Davidian Decl. ¶ 43.) Deducting these two amounts from the outstanding Monroe Academy Project contributions demonstrates that the Funds were owed $21,309.69 in contributions and $143.36 promotion fund contributions on the Monroe Academy Project. (*See* ECF 19, Davidian Decl. ¶ 44.) The total outstanding contributions for the two Projects are $28,392.41.

Plaintiffs request $16,807.25 in liquidated damages, which represents the outstanding damages owed to Plaintiffs after their settlement with UTB and QBE. (*See* ECF 46, Letter at 3; ECF 54, Second Declaration of Adrianna R. Grancio ("Second Grancio Decl."); ECF 54-3, Settlement Agreement.)

5

II.  **Procedural Background**

On October 13, 2023, Plaintiffs filed a Complaint against Prime, UTB, and QBE asserting claims to recover contributions and other associated amounts under ERISA, among other claims. (*See* ECF 1, Compl. ¶¶ 4-15.) Plaintiffs served Defendants Prime, UTB, and QBE, and on the last known counsel for Defendants on October 17, 2023. (*See* ECF 6, Aff. of Service.) Thomas J. Romans appeared on behalf of Prime after Plaintiffs filed a notice of voluntary dismissal against defendants UTB and QBE. (*See* ECF 41, Notice of Voluntary Dismissal; ECF 44, Notice of Appearance.) No attorneys have appeared before the Court on behalf of UTB and QBE.

On November 21, 2023, Plaintiffs filed a proposed certificate of default and a supporting declaration. (*See* ECF 14, Proposed Clerk's Certificate of Default; ECF 15 Decl. in Support.) The Clerk of Court issued a certificate of default the same day. (*See* ECF 16, Certificate of Default.) Plaintiffs were ordered on January 10, 2024 to move for default judgment in accordance with the Court's Individual Practices or to file a letter informing the Court of their intentions. (*See* ECF 17, Order.) On February 9, 2024, Plaintiffs filed a Proposed Order To Show Cause ("OTSC") Without Emergency Relief (ECF 18, Proposed OTSC) along with supporting declarations (ECF 19, Davidian Decl.; ECF 20, First Grancio Decl.). Plaintiffs also filed a proposed Default Judgment pursuant to FRCP 55(b)(1). (*See* ECF 22, Proposed Default J.)

The parties were scheduled for a show-cause hearing on April 30, 2024. (*See* ECF 31, Order.) Before the hearing, Plaintiffs informed the Court that they had reached an agreement in principle that would resolve Plaintiffs' claims against Defendants UTB and QBE. (*See* ECF 33, Letter at 1.) Plaintiffs' settlement with UTB and QBE covered all of the amounts owed to Plaintiffs by Prime, "except for partial liquidated damages totaling $16,807.25." (*See* ECF 46,

Letter at 2; ECF 54, Second Grancio Decl.; ECF 54-3, Settlement Agreement.) On May 6, 2024, Plaintiffs filed a notice of voluntary dismissal against UTB and QBE. (*See* ECF 41, Notice of Voluntary Dismissal.)

On May 6, 2024, Prime filed a letter arguing that the 20% liquidated damages provision constituted an unfair penalty and stating that if Plaintiffs did not withdraw their claim against Prime for $16,807.25 in liquidated damages, Prime would ask the Court to disallow such damages. (*See* ECF 40, Letter at 3-4.) Prime also requested leave to file a crossclaim against UTB for the balance owed by UTB to Prime on the P.S. 67X Project. (*See id.*)

On May 20, 2024, Your Honor referred this matter to a magistrate judge for general pretrial supervision, including scheduling, discovery, non-dispositive pretrial motions, and settlement purposes. (*See* ECF 47, Order; ECF 50, Amended Order.) On May 28, 2024, I held a telephone conference to discuss Prime's May 6 Letter. I issued an order stating that Prime could not file a crossclaim against UTB, because UTB had been dismissed from the case, and that to the extent that Prime wished to challenge Plaintiffs' claim for liquidated damages, Prime could file an appropriately supported opposition to Plaintiffs' application for a default judgment. (*See* ECF 49, Order.) Prime did not file any further documents opposing Plaintiffs' application for a default judgement.

On October 21, 2024, Plaintiffs filed their settlement agreement with UTB and QBE under seal. (*See* ECF 54, Second Grancio Decl.)

7

## LEGAL STANDARDS

### I. Obtaining a Default Judgment

A party seeking default judgment must follow the steps listed in Rule 55 of the Federal Rules of Civil Procedure. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186-87 (2d Cir. 2015); Fed. R. Civ. P. 55. Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterwards, under Rule 55(b), should the party still fail to appear or move to set aside the default, the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

In considering whether to enter default judgments, courts are guided by the factors of: "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense*." J&J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing *Swarna v. Al-awadi*, 622 F.3d 123, 142 (2d Cir. 2010)). Courts must be cautious in awarding default judgment because it is an extreme remedy that should only be granted as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

### II. Determining Liability

A defendant's default concedes "all well-pleaded allegations of liability." *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). However, the Court must then determine if the allegations accepted as true establish liability for the defendants as a matter of law. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). "On a motion for default judgment, the burden is on the plaintiff to establish an entitlement to

recovery, and a failure to plead sufficient facts may require the denial of the motion." *J&J Sports*, 2014 WL 4467774, at *5. If the Court finds that the well-pleaded allegations demonstrate liability, the Court then analyzes "whether [p]laintiff has provided adequate support for the [requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### III.    Determining Damages

Once liability is established, the Court conducts an inquiry on the amount of damages. *See Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." *Dunn v. Advanced Credit Recovery Inc.*, No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992)), *report and recommendation adopted*, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012).

The evidence the plaintiff submits must be admissible. *See Poulos v. City of New York*, No. 14-CV-3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) ("[D]amages must be based

on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (explaining that a court may calculate damages based on declarations and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

## DISCUSSION

**I.      Default Judgment**

Plaintiffs sought a default judgment and proceeded by way of order to show cause pursuant to Your Honor's individual rules. (*See* ECF 18, Proposed OTSC.) I have considered Plaintiffs' submissions carefully and, for the reasons that follow, I respectfully recommend that Plaintiffs' motion be granted.

On the question whether the default was willful, the Court may infer from Prime's failure to file an appropriately supported opposition to Plaintiffs' application for a default judgement that the default was willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that failing to respond to a complaint and subsequent motion for default judgment "indicate willful conduct"). On the issue of prejudice, delaying entry of a default judgment might prejudice Plaintiffs. *See Trustees of New York City Dist. Council of Carpenters Pension Fund v. Ogee Constr., LLC*, No. 17-CV-8207 (LTS) (BCM), 2018 WL 5886441, at *1 (S.D.N.Y. Nov. 9, 2018). As to a potentially meritorious defense, Prime has presented no defense at all. Thus, the

10

requirements of Rule 55 are satisfied, and the relevant factors weigh in Plaintiffs' favor. I conclude that entry of a default judgment is proper in this case.

**II.     Jurisdiction and Venue**

The Court has subject matter jurisdiction because the Complaint alleges ERISA claims. *See* 28 U.S.C. § 1331 (federal question jurisdiction).

Personal jurisdiction is "a necessary prerequisite to entry of a default judgment." *See Reilly v. Plot Com.*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016). The Court has personal jurisdiction over Prime, which was served by Plaintiffs and appeared before this Court and lodged no objection to this Court's exercise of personal jurisdiction. (*See* ECF 6, Aff. of Service; ECF 44, Notice of Appearance.) Prime's appearance conveys implied consent to personal jurisdiction. *See JPMorgan Chase Bank, N.A. v. Nowak*, No. 23-CV-6834 (JPO), 2024 WL 1329410, at *3 (S.D.N.Y. Mar. 28, 2024) (finding personal jurisdiction where the defendant appeared and did not object to the Court's exercise of personal jurisdiction).

Under the general venue provision, "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See* 28 U.S.C. § 1391(b). Pursuant to section 1391(c), a corporate defendant resides in any judicial district where it is subject to personal jurisdiction. *Kennedy Stock, LLC v. NLS New York Inc.*, No. 18-CV-4991, 2019

WL 13096650, at *4 (S.D.N.Y. Nov. 18, 2019), *report and recommendation adopted*, 2021 Wl 5013737 (S.D.N.Y. Oct. 27, 2021). Here, Prime is a resident of Queens, in the Eastern District of New York. (*See* ECF 1, Compl. ¶ 7.)

Even in cases where a defendant maintains its principal place of business in a different New York judicial district than the proposed venue, courts have found that the defendant may still be deemed a resident of the proposed venue. *See Wareka v. Dryluxe LLC*, No. 21-CV-2422 (MKB) (LB), 2022 WL 2467544, at *1 n.3 (E.D.N.Y. Apr. 7, 2022) (holding that venue was proper in the Eastern District of New York despite the defendant's principal place of business being in the Southern District of New York), *report and recommendation adopted*, 2022 WL 2753106 (E.D.N.Y. July 14, 2022); *see also Kennedy Stock*, 2019 WL 13096650, at *3-4 (finding that venue was proper in the Southern District of New York even though the defendant's principal place of business was in Queens), *report and recommendation adopted*, 2021 WL 5013737 (S.D.N.Y. Oct. 27, 2021). In both *Wareka* and *Kennedy*, the defendants were subject to personal jurisdiction throughout New York State, and therefore, for cases against those entities, venue would properly lie in any district within the State. *See Wareka,* 2022 WL 2467544, at *1 n.3 (holding that "venue is proper in this district since Dryluxe, a New York Corporation, is subject to personal jurisdiction throughout New York State"); *Kennedy Stock*, 2019 WL 13096650, at *4 (holding that "[s]ince [the defendant entity] is subject to personal jurisdiction throughout New York State, it is deemed to reside in this district"). Applying the same principle here, I conclude that venue is proper in this District: Prime qualifies as a resident of this District because it is subject to personal jurisdiction throughout New York State as a result of its principal place of business being located in the State.

**III.     Liability**

　　A.     <u>Statute of Limitations</u>

Pursuant to 29 U.S.C. § 1113, "the applicable statute of limitations for claims asserting a breach of fiduciary duty [under ERISA is]: 'the earlier of – (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or . . . (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.'" *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 67 (2d Cir. 2013) (quoting 29 U.S.C. § 1113); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Showtime on the Piers, LLC*, No. 19-CV-7755 (VEC), 2020 WL 2749572, at *4-5 (S.D.N.Y. May 26, 2020) (analyzing ERISA's statute of limitations). Defendants bear the burden of proof when asserting a statute of limitations affirmative defense. *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 519-20 (S.D.N.Y. 2015).

The last underpayment towards contributions on the Monroe Academy Project contributions was made on January 26, 2023, and the last underpayment towards contributions on the P.S. 67X Project was made October 15, 2022. (*See* ECF 20, First Grancio Decl. ¶ 38.) Plaintiffs commenced this action on October 13, 2023, within the statute of limitations. *See, e.g.*, *Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Lee*, No. 15-CV-8081 (KBF), 2016 WL 1064616, at *11 (S.D.N.Y. Mar. 14, 2016) (concluding that the Court cannot determine that the plaintiff's claims are barred by ERISA's statute of limitations).

B.  ERISA Elements

Plaintiffs have pleaded facts sufficient to establish Prime's liability with respect to their ERISA claim. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer is found to violate section 515, it is liable for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and costs of the action, and such other legal or equitable relief as the Court deems appropriate. *See* 29 U.S.C. § 1132(g)(2).

Plaintiffs have sufficiently pleaded that, at all relevant times, Prime was "obligated to make contributions" in accordance with the terms of the CBA it executed with the Union and that Prime failed to fulfill these obligations on the P.S. 67X Project for work performed by Prime's employees from October 10, 2022 to October 16, 2022 and on the Monroe Academy Project for work performed by Prime's employees from September 18, 2022 to January 29, 2023. (*See* ECF 1, Compl. ¶¶ 25, 27.) Plaintiffs have also submitted the CBA and uncontroverted certified payroll and audit records for the periods at issue, which identify Prime's delinquency and delineate Prime's failure to remit benefits contributions and promotional funds. Plaintiffs have also alleged that Prime is responsible for liquidated damages. (See ECF 46, Letter at 2.) Based on the allegations in the Complaint and Prime's initial appearance followed by their failure to appear in this action, Plaintiffs have sufficiently established Prime's liability under ERISA for failing to remit contributions and to pay liquidated damages. *See Ferrara v. PJF Trucking LLC*, No. 13-CV-7191, 2014 WL 4725494, at *5 (E.D.N.Y. Sept. 22, 2014) ("A default

constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."); *Ogee*, 2018 WL 5886441, at *2 (granting default judgement to plaintiff); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. NYC Flooring LLC*, No. 19-CV-6441 (LJL), 2022 WL 1665130, at *1 (S.D.N.Y. May 25, 2022) (same).

Because Plaintiff has adequately alleged Defendants' liability for breach of the ERISA claim, the Court need not reach the merits of Plaintiff's other causes of action. Plaintiff seeks to recover the same damages, for the same conduct, under its other claims (*see* ECF 1, Compl. ¶¶ 1, 4-6), so any recovery on those claims would be duplicative of Plaintiff's ERISA claim. *See Pro. Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13-CV-6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (dismissing claims for account stated and unjust enrichment "because the Court ha[d] already found that Defendants [were] liable for breach of contract and guarantee, and because unjust enrichment and account stated would be duplicative of those claims"). I therefore limit my analysis, for purposes of this inquest, to Plaintiff's ERISA claim.

### IV. Damages

#### A. Evidentiary Basis

The Court must determine whether Plaintiffs has provided sufficient evidence to support their claimed damages. *See Transatlantic Marine*, 109 F.3d at 111; *Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). Plaintiffs filed a declaration detailing benefits contributions and liquidated damages owed to them. (*See generally* ECF 19, Davidian Decl.) They also demonstrated that the amount being sought on

15

default from Prime would not, if corrected, result in a windfall to Plaintiff; that is, the amount being sought by Plaintiffs from Prime on default would not, if collected, lead Plaintiffs to recover more than the total amount owed to them. (*See* ECF 54, Second Grancio Decl.; ECF 54-3, Settlement Agreement.) Apart from a letter requesting leave to file a crossclaim against a dismissed co-defendant (ECF 40), Prime has not responded to the Court's orders or Plaintiffs' application for a default judgment. Prime has also not provided any contrary evidence on the amount of damages owed to Plaintiffs. I therefore conclude that Plaintiffs have met their evidentiary burden of proving damages of $16,807.25. I further conclude that an in-person hearing is unnecessary because Plaintiffs submissions provide a sufficient basis for evaluating the fairness of the damages request. *See, e.g.*, *Ogee*, 2018 WL 5886441, at *1-2 (finding that the plaintiffs had met their evidentiary burden in demonstrating damages during a damages inquest following a default on a claim of ERISA violations); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Shorecon-NY, Inc.*, No. 17-CV-5210 (RA), 2020 WL 3962127, at *3 (S.D.N.Y. July 13, 2020) (same).

    B.    <u>Liquidated Damages</u>

Following the settlement between Plaintiffs and Defendants UTB and QBE, Plaintiffs informed the Court that the action would proceed against Prime for unpaid liquidated damages in the amount of $16,807.25. (*See* ECF 46, Letter at 2; ECF 54, Second Grancio Decl.; ECF 54-3, Settlement Agreement.) Plaintiffs have sufficiently established the liquidated damages amount exceeds the amount sought by Plaintiffs in their default judgment application, and Plaintiffs have demonstrated that there is no risk that the amount sought would not lead Plaintiffs to

receive a windfall due to the settlement with UTB and QBE. Accordingly, I conclude that Plaintiffs are entitled to an award of $16,807.25 in liquidated damages.

      C.      <u>Attorney's Fees and Costs</u>

Plaintiffs have not requested any attorney's fees and costs from Prime. (*See* ECF 20, First Grancio Decl. ¶ 50; ECF 20-4, Billing Statement; ECF 46, Letter.)

### **CONCLUSION**

For the reasons set forth above, I respectfully recommend that the motion for a default judgment should be granted and that judgment should be entered against Prime in favor of the Funds, with the Funds to be awarded $16,807.25 in liquidated damages, plus post-judgment interest pursuant to 28 U.S.C. § 1961.

DATED:     November 18, 2024
                  New York, New York

                                                   Respectfully Submitted,

                                                   **ROBYN F. TARNOFSKY**
                                                   **United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).